110

## WERBER v. WALLOP.
### No. 344.

Municipal Court of Appeals for the District of Columbia.

March 5, 1946.

Karl J. Hardy, of Washington, D. C., for appellant.

J. Edward Burroughs, Jr., of Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD, Associate Judge.

CAYTON, Chief Judge.

This is an appeal from a judgment in favor of plaintiff Wallop, a licensed insurance solicitor, for $1,877, representing one-half of commissions received by defendant Werber for the sale to one Duncan of certain life insurance policies in the sum of $200,000.

Wallop had been in the general insurance business for many years and since about 1928 had handled practically all of Duncan's insurance business. In 1941 and 1942 he had sought to interest Duncan in new life insurance for the protection of the corporation of which Duncan was the head. In the meantime Werber came into the picture and worked on a similar plan of insurance for Duncan. During several conferences Duncan made it plain to Werber that because of his long association with Wallop, he would require Werber to divide his commissions equally with Wallop. Later, at Duncan's request, Wallop examined the policies in Werber's office and reported favorably thereon to Duncan. During their conversation Werber asked Wallop's assistance in getting the deal closed promptly. At the same time Wallop reminded Werber that he was to receive one-half the commissions; but Werber sought to convince him that he should accept 25%, and no agreement as to Wallop's share was reached at that time.

Between Duncan and Werber, however, a clear agreement was reached, or so the evidence for plaintiff established. Duncan testified that in every conversation with Werber he insisted that if he was to buy the insurance, Wallop must receive one-half of the commissions; that he, Duncan, was undecided whether to let Werber write half the insurance and Wallop the other half, and finally agreed to let Werber write it all, on his promise to share the commissions equally with Wallop. He said he insisted that Wallop "would have to be cut in that way," and that although Werber at first protested, he finally agreed "if that is the way it has to be that is the way it will be." Upon that assurance Duncan authorized Werber to write the policies.

Thereafter, in January 1944, Werber wrote Wallop assuring him that all renewals would be turned over to him until his "full share" of the commissions was paid. Thereafter Duncan called upon Werber to comply with his agreement for an equal division with Wallop. Instead, Werber sent Wallop a check for $375.40; Wallop replied that he would accept it only as a payment on account; and Werber stopped payment on the check. This litigation resulted.

We think the trial judge was correct in allowing plaintiff the full amount of his claim.

Appellant Werber contends that the alleged agreement between himself and Duncan was not based on a valid con-

sideration, but we think this position is untenable. The order for the policies was Duncan's to grant or withhold. He might have given it all to Wallop, or half to Wallop and half to Werber. In deciding to give it all to Werber, he did so only upon Werber's express (though reluctant) promise that he would divide the commissions equally with Wallop. We think the situation eloquently bespeaks consideration and requires neither elaboration nor citation to support it.

 Appellant argues that to comply with the agreement would be violative of our insurance laws. He points to the language of Code 1940, § 35—715, which reads:

"Discriminations prohibited.

"* * * nor shall any such company or officer, agent, solicitor, or representative thereof pay, allow, or give, or offer to pay, allow, or give, directly or indirectly, as inducement to any person to insure, or give, sell, or purchase, or offer to give, sell, or purchase as such inducement or in connection with such insurance, * * * any stocks, bonds, or other securities * * * or any dividends or profit accruing thereon, or any valuable consideration or inducement whatever not specified in the policy, nor shall any person knowingly receive any such inducement, any rebate of premium, or any special favor or advantage in the dividends or other benefits to accrue thereon, * * * or any valuable consideration or inducement whatever, not specified in the policy."

We cannot agree that this language invalidated the agreement between Duncan and Werber. It was clearly intended, as its title indicates, to prevent discrimination and to keep rates uniform by prohibiting rebates, kickbacks, or other improper manipulating of premiums. No such illegal arrangement is present here. There is no suggestion that Duncan was to receive even one cent of the commissions. His only interest was to hold Werber to his bargain and require him to pay Wallop what he had promised; that and that alone was Duncan's interest. And in holding Werber to the performance of his agreement, it cannot be said that Duncan was receiving "any special favor or advantage," or any other benefit prohibited by the statute.

Another argument advanced by appellant is that because Wallop was licensed as a solicitor and not as a broker, he could not legally split commissions with him under the restrictions imposed by the Code section above cited. We think otherwise. We find nothing in the letter or the spirit of that section, or elsewhere in the statute, which would preclude a solicitor of life insurance from sharing commissions with a broker, provided the arrangement is (as this was) otherwise within the law.

Decisions on the exact question are few; but we refer to two comparatively recent cases which lend support to the views we have expressed. They are: Wolfe v. Philippine Inv. Co., 175 Wash. 165, 27 P.2d 132; and Carroll v. Santamarie, 95 Pa. Super. 74.

Affirmed.